```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JOSEPH LOBAITO, JR.,                 :

                 Plaintiff,          :    13 Civ. 6011 (GBD)(HBP)

    -against-                        :    REPORT AND
                                          RECOMMENDATION
FINANCIAL INDUSTRY REGULATORY        :
AUTHORITY, INC. (FINRA),
                                     :
                 Defendant.
                                     :
----------------------------------X
```

PITMAN, United States Magistrate Judge:

TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,

I.   Introduction

Pro se plaintiff Joseph Lobaito, Jr. commenced this action under the Securities Exchange Act of 1934, alleging that the Financial Industry Regulatory Authority ("FINRA") violated its rules and regulations when processing plaintiff's securities industry registration termination.  By notice of motion dated October 22, 2013 (Docket Item 8), FINRA moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  For the reasons set forth below, I respectfully recommend that FINRA's motion be granted.

II.  Facts

The following facts are taken from plaintiff's com-
plaint (Docket Item 2 ("Compl.")) and its attachments, as well as
matters of public record and undisputedly authentic documents on
which plaintiff's claims are based and of which this Court may
take judicial notice.  Lobaito v. Chase Bank, 429 F. App'x 100,
101 (2d Cir. 2013) (summary order) (district court properly
considered "additional documents submitted by Chase, such as
[plaintiff's] Form U5 termination notice and his amended FINRA
statement of claim"); accord Buscetto v. Fin. Indus. Reg. Auth.,
Civil Action No. 11-6308 (JAP), 2012 WL 1623874 at *3 & n.3
(D.N.J. May 9, 2012); see also, e.g., L-7 Designs, Inc. v. Old
Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

A.  Regulatory
    Background

Proper assessment of plaintiff's claims requires an
understanding of the relevant administrative and regulatory
framework.

"FINRA is a self-regulatory organization and national
securities association that is registered with the Securities and
Exchange Commission (the 'SEC')," and "is the successor entity to
the National Association of Securities Dealers ('NASD')."  WC

Capital Mgmt., LLC v. UBS Sec., LLC, 711 F.3d 322, 326 n.2 (2d
Cir. 2013); accord Xu v. Fin. Indus. Reg. Auth. Inc., 503 F.
App'x 7, 8 (2d Cir. 2012) (summary order).  "As an integral part
of a comprehensive system of federal regulation of the securities
industry, [FINRA] regulates the over-the-counter securities
market, which includes securities firms and registered represen-
tatives who buy and sell over-the-counter-securities." Desiderio
v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 201 (2d Cir.
1999); see 15 U.S.C. § 78o-3.  FINRA's "authority is exercised
under the close supervision of the SEC, which must approve all
[of FINRA's] rules and regulations." Desiderio v. Nat'l Ass'n of
Sec. Dealers, Inc., supra, 191 F.3d at 201; see 15 U.S.C. §
78s(b).

            Among the rules that have been approved by the SEC are
FINRA's standards for the uniform licensing and registration of
securities professionals, see 15 U.S.C. § 78o-3(b)(3), 3(g)(3),
3(i)(1), including two forms used in registering and terminating
the registration of securities industry representatives.  Form U-
4 must be filed whenever a registered representative becomes an
employee of a securities firm.  Quanta Lines Ins. Co. v. Inves-
tors Capital Corp., 06 Civ. 4624 (PKL), 2009 WL 4884096 at *3 n.2
(S.D.N.Y. Dec. 17, 2009) (Leisure, D.J.), aff'd, 403 F. App'x 530
(2d Cir. 2010) (summary order); Jordan v. Metro. Life Ins. Co.,

03 Civ. 4110 (SAS), 2004 WL 1752822 at *1 (S.D.N.Y. Aug. 4, 2004)
(Scheindlin, D.J.).  Form U-4 "incorporates a provision for
compulsory arbitration of all disputes between a securities
representative and her employer." Desiderio v. Nat'l Ass'n of
Sec. Dealers, Inc., supra, 191 F.3d at 201; see Jordan v. Metro.
Life Ins. Co., supra, 2004 WL 1752822 at *1.

　　　　Whenever a securities firm terminates a registered
employee, the firm must file a Form U-5 with FINRA, stating the
reason for termination (FINRA By-Laws, Article V, Sec. 3, at-
tached to FINRA's Memorandum of Law in Support of Motion to
Dismiss Complaint (Docket Item 9) ("Def.'s Mem.") as Ex. 2
("FINRA By-Laws Sec. 3")).  See Rosenberg v. Metlife, Inc., 453
F.3d 122, 123 (2d Cir. 2006); Quanta Lines Ins. Co. v. Investors
Capital Corp., supra, 2009 WL 4884096 at *3 n.2; Jordan v. Metro.
Life Ins. Co., supra, 2004 WL 1752822 at *1; Loew v. Kolb, 03
Civ. 5064 (RCC), 2003 WL 22077454 at *1 n.1 (S.D.N.Y. Sept. 8,
2003) (Casey, D.J.) (FINRA "regulations require that any time a
Series 7 licensed individual is terminated, a Form U-5 be com-
pleted outlining the reasons for termination.").  FINRA is
required to maintain the reported registration information and
make it available to the public. 15 U.S.C. § 78o-3(i); Rosenberg
v. Metlife, Inc., supra, 453 F.3d at 123; Buscetto v. Fin. Indus.
Reg. Auth., supra, 2012 WL 1623874 at *3.  "To carry out its

statutory duties, FINRA established the CRD [Central Registration Depository] database and BrokerCheck, an internet resource that the public can use to obtain registration information about current and former representatives." Buscetto v. Fin. Indus. Reg. Auth., supra, 2012 WL 1623874 at *3; see 15 U.S.C. § 78o-3(i)(1)(B).

"Firms use the [Form U-5] information to help them make informed employment decisions" (FINRA Regulatory Notice 10-39, dated Sept. 2010 and attached to Compl. ("Reg. Notice 10-39"), at 1). See Rosenberg v. Metlife, Inc., supra, 453 F.3d at 123 ("The form . . . is typically requested by member firms whenever a broker applies for a new job."). Thus, "[a]lthough the forms were designed to provide both member firms and the public with information about brokers' conduct, they also can be used to smear and defame former employees." Rosenberg v. Metlife, Inc., supra, 453 F.3d at 123; see Jordan v. Metro. Life Ins. Co., 280 F. Supp. 2d 104, 108 n.6 (S.D.N.Y. 2003) (Scheindlin, D.J.) ("A negative Form U-5 'can effectively "blackball" a [dealer] from the industry.'"), quoting Acciardo v. Millennium Sec. Corp., 83 F. Supp. 2d 413, 419 (S.D.N.Y. 2000) (Batts, D.J.) and citing Dawson v. N.Y. Life Ins. Co., 135 F.3d 1158, 1164 (7th Cir. 1998) ("Any embellishment or exaggeration [in a Form U-5] can only

damage the agent's professional reputation and make the job hunt more difficult.").

    B.   Factual
          <u>Background</u>

From September to November 2007, plaintiff was employed as a financial advisor at Chase Investment Services Corporation ("Chase") (Compl. at III.C; Plaintiff's Form U-5, dated Dec. 4, 2007 and attached to Compl. ("Form U-5"), § 1).  Chase terminated plaintiff on November 8, 2007 and filed a Form U-5 with FINRA in accordance with applicable regulations (Form U-5 §§ 1, 4; FINRA By-Laws Sec. 3).  Chase cited "job performance" in Section 3 of the Form as the reason for plaintiff's termination (Form U-5 § 3).  Section 7 of the Form asks a series of "Disclosure Questions" and instructs the firm to disclose complete details of all events or proceedings if it answers "yes" to any of the questions (Form U-5 § 7).[1]  Chase answered "no" to every question in Section 7 (Form U-5 §§ 7A-7F).

––––––––––––––––

[1]FINRA Regulatory Notice 10-39 provides additional guidance regarding the Section 7 Disclosure Questions (Reg. Notice 10-39). Plaintiff relies on one instruction in particular, which states that firms "must provide sufficient detail when responding to Form U5 questions such that a reasonable person may understand the circumstances that triggered the affirmative response" (Reg. Notice 10-39 at 2; <u>see</u> Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint, dated Dec. 6, 2013, ("Pl.'s Mem.") at 3-4).

Plaintiff asserts that Chase, his "former employer, without [his] knowledge, fabricated a comment on [his] licenses" (Compl. at III.C).[2]  Relying on Reg. Notice 10-39, plaintiff alleges that "FINRA violated their own rules and regulations" in processing his Form U-5 "because they were required to kick back [plaintiff's] licenses to [his] former employer, and demand that they cite the circumstances and specify and cite the company policies that were violated, on [his] licenses, in the comments section" (Compl. at III.C; <u>see</u> Reg. Notice 10-39; Pl.'s Mem. at 3-4).  FINRA's failure to comply with its own regulations allegedly "ruined [plaintiff's] licenses," which later expired (Compl. at III.C; <u>see</u> Reg. Notice 10-39; Pl.'s Mem. at 3-4).

Plaintiff seeks $500,000 in lost earnings and $1 million in punitive damages (Compl. at V).  Plaintiff also seeks an order compelling FINRA to "expunge the comment on [his] licenses" (Compl. at V).

---

[2]Plaintiff alleges that Chase "fabricated a comment on [his] licenses" (Compl. at III.C), which the Court assumes is a reference to Chase's stated reason for termination.  Plaintiff does not otherwise explain his reference to this "fabricated [] comment."

7

C.   Procedural
     Background

On November 12, 2009, plaintiff filed a FINRA Arbitra-
tion Statement of Claim asserting causes of action against Chase
for "breach of contract, commissions, compensation, libel or
slander on Form U5, and wrongful termination" and requesting
"compensatory damages in the amount of $24,000.00, punitive
damages in the amount of $150,000,000.00, and expungement" (FINRA
Dispute Resolution Arbitration Award, dated Apr. 26, 2011,
attached to Def.'s Mem. as Ex. 4, ("FINRA Arb. Award") at 1).  On
April 26, 2011, after considering "the pleadings, the testimony
and evidence presented at the hearing," a FINRA Arbitration Panel
"decided in full and final resolution of the issues submitted for
determination" that plaintiff's "claims [we]re denied in their
entirety" and all relief was denied (FINRA Arb. Award at 2).

On September 26, 2011, plaintiff initiated an action
against Chase in this Court.  Lobaito v. Chase Bank, 11 Civ. 6883
(PGG), 2012 WL 3104926 (S.D.N.Y. July 31, 2012) (Gardephe, D.J.)
("Lobaito I"), aff'd, 529 F. App'x 100 (2d Cir. 2013) (summary
order).  Plaintiff alleged he was "terminated, for no reason,"
and that Chase "wrote an untrue comment on [his] licenses," which
"blocked [him] from working in the financial industry ever
again," "ruined [his] future in the financial industry, [and]

8

ruined [his] licenses, [which] are now expired" (<u>Lobaito I</u>
Complaint, dated Sept. 26, 2011, (11 Civ. 6883, Docket Item 2),
("<u>Lobaito I</u> Compl.") at III.C, V).  On July 31, 2012, The Honor-
able Paul G. Gardephe, United States District Judge, granted
Chase's motion to dismiss on <u>res judicata</u> grounds, holding
plaintiff could not relitigate the same issues he had previously
presented in the FINRA arbitration.  <u>Lobaito v. Chase Bank</u>,
<u>supra</u>, 2012 WL 3104926 at *1.  Judge Gardephe found that plain-
tiff's claims -- including "that Chase 'wrote an untrue comment
on [his] licenses, and lied, and made up a whole story about
[him],' which 'ruin[ed] [his] future in the financial industry'"
-- were the same, recycled claims from his FINRA arbitration and
"'ar[o]se from a common nucleus of operative fact.'"  <u>Lobaito v.</u>
<u>Chase Bank</u>, <u>supra</u>, 2012 WL 3104926 at *4.  The Second Circuit
affirmed Judge Gardephe's decision, 529 F. App'x 100, and plain-
tiff's motion for reconsideration was denied on October 22, 2013
(<u>Lobaito I</u> Order Denying Reconsideration, dated Oct. 22, 2013,
(12-3492-cv, Docket Item 89)).

     Plaintiff initiated the present suit on August 23,
2013, again alleging that Chase "fabricated a comment on [his]
licenses," but seeking now to hold FINRA liable for its failure
to "demand that [Chase] cite the circumstances and specify and

cite the company policies that were violated, on [his] licenses,"

conduct alleged to violate FINRA rules (Compl. at III.C).

III.  <u>Analysis</u>

    A.  Standards Applicable to
       Motion to Dismiss
       <u>Pursuant to Rule 12(b)(6)</u>

      The standards applicable to a motion to dismiss pursu-

ant to Rule 12(b)(6) are well-settled and require only brief

review.

> The Supreme Court has established a two-step process
> for determining whether a plaintiff has pled sufficient
> facts to overcome a motion to dismiss.  A court must
> first ignore "mere conclusory statements" or legal
> conclusions, which are not entitled to the presumption
> of truth.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.
> Ct. 1937, 173 L.Ed.2d 868 (2009) (citing <u>Bell Atl.
> Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955,
> 167 L.Ed.2d 929 (2007)).  Then, assuming the veracity
> of the remaining facts, "a complaint must contain
> sufficient factual matter . . . to 'state a claim [for]
> relief that is plausible on its face.'"  <u>Id</u>. (quoting
> <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955).  A claim is
> plausible "when the plaintiff pleads factual content
> that allows the court to draw the <u>reasonable</u> inference
> that the defendant is liable for the misconduct al-
> leged."  <u>Id</u>. (emphasis added).  While this plausibility
> standard is not "akin to a 'probability requirement,'"
> it "asks for more than a sheer possibility that a
> defendant has acted unlawfully."  <u>Id</u>. (quoting <u>Twombly</u>,
> 550 U.S. at 556, 127 S. Ct. 1955).  Pleading facts that
> are "'merely consistent with' a defendant's liability"
> is insufficient.  <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at
> 557, 127 S. Ct. 1955).

Pungitore v. Barbera, 506 F. App'x 40, 42 (2d Cir. 2012) (summary order); see also Allen v. Norman, 548 F. App'x 25, 26 (2d Cir. 2013) (summary order); Virgil v. Town of Gates, 455 F. App'x 36, 37 (2d Cir. 2012) (summary order); Smith v. NYCHA, 410 F. App'x 404, 405-06 (2d Cir. 2011) (summary order).

"[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006), quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). In ruling on a motion to dismiss, the court is also permitted to consider matters that are judicially noticeable. See Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 208 (2d Cir. 2012), cert. denied, 133 S. Ct. 2022 (2013); Hoffenberg v. Bodell, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3 (S.D.N.Y. Sept. 30, 2002) (Preska, D.J.) ("The Court also may consider 'matters of which judicial notice may be taken.'"), quoting Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999).

Where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims that the allegations suggest.  Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

B.  Defendant's Arguments

Defendant moves to dismiss plaintiff's complaint on three grounds:  (1) no private right of action exists against FINRA under the Exchange Act; (2) FINRA has absolute immunity as a securities regulator and (3) plaintiff's expungement claim is barred by the doctrine of collateral estoppel.

1.  Private Right of Action

Defendant first argues that plaintiff's complaint should be dismissed because there is no private right of action under the Exchange Act for the action (or inaction) plaintiff alleges against FINRA.

a.  Applicable Law:
No Private Right of
Action Under the Exchange Act

It is well established in the Second Circuit that no private right of action exists for FINRA's actions taken in

12

furtherance of its regulatory duties, including enforcement of its own rules. Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., supra, 191 F.3d at 208 ("[W]e have previously held there is no private right of action available under the Securities Exchange Act to redress denials of membership in an exchange, or to challenge an exchange's failure to follow its own rules."), citing Feins v. Am. Stock Exch., Inc., 81 F.3d 1215, 1216 (2d Cir. 1996); see also In re Apple REITs Litig., No. 11-CV-2919 (KAM), 2013 WL 1386202 at *15 n.12 (E.D.N.Y. Apr. 3, 2013), citing Weinraub v. Glen Rauch Sec., Inc., 399 F. Supp. 2d 454, 462 (S.D.N.Y. 2005) (Scheindlin, D.J.), aff'd, 180 F. App'x 233 (2d Cir. 2006) (summary order); Richman v. Goldman Sachs Grp., Inc., 868 F. Supp. 2d 261, 275 (S.D.N.Y. 2012) (Crotty, D.J.); Tucker v. Janney Montgomery Scott, Inc., 96 Civ. 1823 (LLS), 1997 WL 151509 at *3 (S.D.N.Y. Apr. 1, 1997) (Stanton, D.J.), citing Jaksich v. Thomson McKinnon Sec., Inc., 582 F. Supp. 485, 499-501 (S.D.N.Y. 1984) (Cooper, D.J.); Raul v. Am. Stock Exch., Inc., 95 Civ. 3154 (SAS), 95 Civ. 8361 (SAS), 1996 WL 381781 at *3-*5 (S.D.N.Y. May 2, 1996) (Scheindlin, D.J.); Castro v. Marine Midland Bank, N.A., 695 F. Supp. 1548, 1551-52 (S.D.N.Y. 1988) (Kram, D.J.).[3]

---

[3]The holding that no private right of action existed against
(continued...)

b.  Application of the
    <u>Foregoing Principles</u>

Plaintiff purports to assert a claim under the Securities and Exchange Act based on FINRA's failure to comply with its rules (Compl. at III.C; <u>see</u> Pl.'s Mem. at 2-4).  Plaintiff argues this case falls outside the line of cases holding no private right of action exists because the cases from within this Circuit have not specifically involved FINRA's alleged violation of "its rules pertaining to termination paperwork" (Pl.'s Mem. at 2-3). The crux of plaintiff's claim is that an actionable violation occurred when Chase submitted, and FINRA accepted, the Form U-5 that described the reason for plaintiff's termination as "job performance" (Pl.'s Mem. at 2; Form U-5 § 3).  Plaintiff relies on Reg. Notice 10-39's requirement that Chase "must provide sufficient detail when responding to Form U5 questions such that a reasonable person may understand the circumstances that triggered the affirmative response" (Reg. Notice 10-39 at 2; <u>see</u> Pl.'s Mem. at 3).  Plaintiff argues that Chase violated Reg. Notice 10-39 by providing "incomplete information" when it "simply wrote 'job performance' as the reason for termination" on

---

[3](...continued)
NASD for violations of its rules "is applicable to FINRA rules, since FINRA is NASD's successor."  <u>Richman v. Goldman Sachs Grp., Inc.</u>, <u>supra</u>, 868 F. Supp. 2d at 275 & n.5.

his Form U-5, and that FINRA violated its own rules and regula-
tions when it "failed in its responsibility to ensure that Chase,
as a member of the exchange, followed FINRA's rules" (Pl.'s Mem.
at 3-4).[4]

Plaintiff is correct that none of the cases in this
Circuit have directly addressed whether a private right of action
exists under the Exchange Act specifically for alleged violations
of FINRA's Form U-5 rules and regulations.  Nevertheless, plain-
tiff has neither cited any authority nor made any compelling
arguments for carving out an exception to the Second Circuit's
general bar for claims against FINRA based on alleged violations
of termination paperwork rules.  Moreover, at least two courts
outside this Circuit have explicitly held that no private right
of action exists under the Exchange Act for alleged violations of
Form U-5 rules and regulations.

In <u>Meyers v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, No. 95-
CV-75077, 1996 WL 1742619 at *4 (E.D. Mich. Mar. 29, 1996)

---

[4]Although it is not necessary to reach the merits of
plaintiff's claim, the Court notes that plaintiff's reliance on
Reg. Notice 10-39 is utterly misplaced because plaintiff is
challenging Chase's answer to Section 3's reason-for-termination
question, and Reg. Notice 10-39 "provides guidance to firms
regarding the Section 7 Disclosure Questions [and thus] has no
relevance to Mr. Lobaito's termination and certainly imposes no
obligations on FINRA regarding his termination" (Def.'s Mem. at
5; <u>see</u> Form U-5 §§ 3, 7; Reg. Notice 10-39).

("Meyers"), plaintiffs brought an action under the Exchange Act based on NASD's alleged "'fail[ure] to correct the misstatements, omissions, and inaccuracies contained'" in U-5 Forms.[5]  Noting that "a majority of courts have held that there is no private cause of action against the NASD for a violation of its own rules," the court dismissed the action "as an unsuccessful attempt to create a private cause of action for the violation of the NASD rules where none exists."  Meyers v. Nat'l Ass'n of Sec. Dealers, Inc., supra, 1996 WL 1742619 at *4-*5 & n.6 (collecting cases), citing in part Castro v. Marine Midland Bank, N.A., supra, 695 F. Supp. at 1552.

Similarly, in In re Olick, No. 99-CV-5128, 2000 WL 354191 at *2 (E.D. Pa. Apr. 4, 2000), plaintiff alleged that his former employer "filed with the NASD several inaccurate U-5 forms" and that the NASD "was negligent in allowing inaccurate and incomplete information to be published."  Citing Meyers, and noting that "other circuits considering this issue have concluded

---

[5]Just as plaintiff here relies on a FINRA regulatory notice describing member firms' obligations to FINRA (Reg. Notice 10-39) as the basis for his allegation that FINRA violated its own obligation, plaintiffs in Meyers likewise "allege[d] that the basis for [their] contention that the NASD ha[d] a duty to investigate the validity of the statements within the U-5 forms [was] found in a statement in a NASD pamphlet which described a broker's obligation to his employer."  Meyers v. Nat'l Ass'n of Sec. Dealers, Inc., supra, 1996 WL 1742619 at *4.

that parties have no private right of action against the NASD for violations of its own rules," the court dismissed the action holding that plaintiff "may not maintain a private cause of action against the NASD under the Exchange Act."  In re Olick, supra, 2000 WL 354191 at *3-*4, citing in part Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., supra, 191 F.3d at 207-08.[6]

Accordingly, because the Second Circuit has clearly held that no private right of action against FINRA exists under the Exchange Act for violations of its own regulations -- a holding that courts outside this Circuit have specifically applied to Form U-5 regulations -- plaintiff's damages claims should be dismissed on the ground that he has no private right of action for FINRA's violation of Reg. Notice 10-39 or any other regulation pertaining to registration termination or Form U-5.

---

[6]Dobbins v. Nat'l Ass'n of Sec. Dealers, No. 06CV2968, 2007 WL 2407081 at *1-*3 (N.D. Ohio Aug. 22, 2007), reached the same result, the Court noting:

> The gravamen of the 212-paragraph, 74-page Complaint is the request by Dobbins for expungement of information from the Central Registration Depository ('CRD') system . . . . Dobbins is challenging the NASD's application and interpretation of its rules enacted pursuant the Securities Exchange Act of 1934 . . . [and] seeks to impose monetary liability on the NASD for its regulatory actions and omissions. . . . NASD's Motion to Dismiss . . . is GRANTED . . . [because] there is no private right of action against the NASD.

17

2.  <u>Immunity</u>

Defendant next argues that plaintiff's complaint should be dismissed because FINRA has absolute immunity as a securities regulator.

    a.  Applicable Law: Immunity of
            <u>Self-Regulatory Organizations</u>

FINRA is registered as a self-regulatory organization ("SRO") under the Securities Exchange Act of 1934.  <u>Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.</u>, 661 F.3d 164, 172 (2d Cir. 2011), <u>cert</u>. <u>denied</u>, 132 S. Ct. 2439 (2012).

It is well settled in the Second Circuit that SROs such as FINRA are absolutely immune with respect to actions taken in furtherance of their regulatory duties.  <u>Xu v. Fin. Indus. Reg. Auth. Inc.</u>, <u>supra</u>, 503 F. App'x at 8 ("As an SRO, FINRA and its officers 'are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities.'"), <u>quoting</u> <u>Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 637 F.3d 112, 115 (2d Cir. 2011) (<u>per</u> <u>curiam</u>), <u>cert</u>. <u>denied</u>, 132 S. Ct. 1093 (2012); <u>DL</u>

Capital Grp., LLC v. Nasdaq Stock Mkt., Inc., 409 F.3d 93, 97 (2d
Cir. 2005) ("There is no question that an SRO and its officers
are entitled to absolute immunity when they are, in effect,
'acting under the aegis' of their regulatory duties."), quoting
Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc., 159
F.3d 1209, 1214 (9th Cir. 1998); In re NYSE Specialists Sec.
Litig., 503 F.3d 89, 96 (2d Cir. 2007) (Sotomayor, then Cir. J.,
now S. Ct. J.); see also In re Series 7 Broker Qualification Exam
Scoring Litig., 510 F. Supp. 2d 35, 42 (D.D.C. 2007) ("[T]he
Second Circuit . . . [has] concluded that an SRO is absolutely
immune 'from liability for claims arising out of the discharge of
its duties under the Exchange Act.' . . . The Second Circuit has
taken the further step of according absolute immunity to private
entities that exercise regulatory functions pursuant to a delega-
tion of authority from an SRO."), aff'd, 548 F.3d 110 (D.C. Cir.
2008).

          "This immunity extends both to affirmative acts as well
as to an SRO's omissions or failure to act."  Standard Inv.
Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., supra, 637
F.3d at 115; see In re NYSE Specialists Sec. Litig., supra, 503
F.3d at 97.

b.   Application of the
     Foregoing Principles

Plaintiff's claim is based on FINRA's acceptance of
allegedly inaccurate or incomplete information in the Form U-5
submitted by Chase.  As explained by the Honorable William H.
Yohn, Jr., United States District Judge, FINRA is entitled to
absolute immunity for the type of Form U-5 related action (or
inaction) alleged here:

> In this case, the plaintiff's complaint against
> [FINRA] revolves around [FINRA]'s inclusion of alleg-
> edly defamatory statements in the U-5 forms that were
> included in the plaintiff's record in the CRD.  The act
> of maintaining records . . . in the CRD is a regulatory
> duty of [FINRA] that is undertaken under the aegis of
> the Exchange Act's delegated authority.  I therefore
> conclude that [FINRA] is immune from suit for these
> actions.  Accordingly, I will . . . dismiss the plain-
> tiff's complaint for failure to state a claim upon
> which relief can be granted.

In re Olick, supra, 2000 WL 354191 at *5 (footnote omitted); see
15 U.S.C. § 78o-3(h)-(i); Standard Inv. Chartered, Inc. v. Nat'l
Ass'n of Sec. Dealers, Inc., supra, 637 F.3d at 116 ("[W]e have
found stock exchange SROs absolutely immune from suit where the
alleged misconduct concerned . . . the enforcement of security
rules and regulations and general regulatory oversight over
exchange members . . . ."), citing D'Alessio v. N.Y. Stock Exch.,
Inc., 258 F.3d 93, 106 (2d Cir. 2001); In re NYSE Specialists
Sec. Litig., supra, 503 F.3d at 99 n.4 (where plaintiffs alleged

that the SRO "violated its own internal rules" court held the
"enforcement (or nonenforcement) of these rules clearly impli-
cates the quasi-governmental functions" for which the SRO is
entitled to absolute immunity); accord Buscetto v. Fin. Indus.
Reg. Auth., supra, 2012 WL 1623874 at *3-*4 & n.4 (where plain-
tiff sought "to have the information concerning the disciplinary
action against him expunged from the Central Registration Deposi-
tory ('CRD')," court found dismissal was "warranted because FINRA
is entitled to immunity from this action, as it arises from
FINRA's exercise of its regulatory functions"), citing Lucido v.
Mueler, No. 08-15269, 2009 WL 3190368 at *7 (E.D. Mich. Sept. 29,
2009), aff'd, 427 F. App'x 497 (6th Cir. 2011) (per curiam) and
Dobbins v. Nat'l Ass'n of Sec. Dealers, supra, 2007 WL 2407081 at
*3 ("[FINRA] has absolute immunity for its regulatory acts and
omissions . . . ."); Guevara v. Metro. Life Ins. Co., No. CIV. A.
00-5975, 2001 WL 41133 at *3 (E.D. Pa. Jan. 17, 2001) ("[FINRA]
has absolute immunity from suits claiming that it violated its
own rules or for other actions taken in conjunction with its
regulatory role.").

Accordingly, plaintiff's damages claims against FINRA
should be dismissed on the additional ground that FINRA is
absolutely immune from suit based on the conduct alleged here.

### 3. <u>Collateral Estoppel - Expungement</u>

The complaint alleges that Chase, plaintiff's "former employer, without [his] knowledge, fabricated a comment on [his] licenses," and states that he seeks to have the Court "expunge the comment on [his] licenses" (Compl. at III.C, V). Defendant's motion argues plaintiff "is collaterally estopped from pursuing expungement relief in this case" because "the [FINRA] Arbitration Panel considered and denied [this issue], on the merits, and because this Court has already found the expungement issue to have been determined by that Arbitration Panel" (Def.'s Mem. at 9). In opposition, plaintiff argues that "this case is not barred by collateral estoppel" because plaintiff "is not asking for expungement of comments but for monetary damages as a result of lost revenue due to FINRA's actions" (Pl.'s Mem. at 6), even though this argument directly contradicts the request for relief in plaintiff's complaint (<u>see</u> Reply Brief in Support of Defendant Financial Industry Regulatory Authority, Inc.'s Motion to Dismiss Complaint, dated Dec. 16, 2013, (Docket Item 14) ("Def.'s Reply Mem.") at 4).

To the extent plaintiff in fact seeks expungement in this action, any such relief is barred by the doctrine of collateral estoppel.

      a.  Applicable Law:
         Collateral Estoppel

     "'Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.'" M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 284 (2d Cir. 2012), quoting Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002); see W & D Imps., Inc. v. Lia, Docket No. 13-1983-CV, --- F. App'x ----, 2014 WL 1465383 at *2 (2d Cir. Apr. 16, 2014) (summary order), quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001); Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998); see also Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 598 (1948) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.").

     Unlike the doctrine of res judicata (claim preclusion), the doctrine of collateral estoppel (issue preclusion) does not require that the parties to the later action be identical to those in the first. See United States v. Ustica, 847 F.2d 42, 49 n.14 (2d Cir. 1988) ("Nonmutual collateral estoppel refers to the situation in which one party is barred from relitigating an issue decided in a previous proceeding, where the parties were not the same in the prior proceeding."); Chevron Corp. v. Donziger, 886

F. Supp. 2d 235, 272 (S.D.N.Y. 2012) (Kaplan, D.J.) ("Where all other requirements are satisfied, a party may be 'barred from relitigating an issue decided in a prior proceeding, [even] where the parties were not the same in the prior proceeding.'"), quoting United States v. Ustica, supra, 847 F.2d at 49 n.14; see also United States v. Mendoza, 464 U.S. 154, 158 (1984) (noting the Supreme Court "has broadened the scope of the doctrine of collateral estoppel beyond its common law limits" by "abandoning the requirement of mutuality of parties"), citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971).

        To assert a defense of collateral estoppel, a party must establish four elements:  "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'"  Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006), quoting Purdy v. Zeldes, 337 F.3d 253, 258 & n.5 (2d Cir. 2003); accord Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013); Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005); Marvel Characters, Inc. v. Simon, supra, 310 F.3d at 288-89; White v. White, 12 Civ. 200 (GBD), 2013 WL 1340145 at *3 (S.D.N.Y. Mar. 28, 2013) (Daniels,

24

D.J.), aff'd, 556 F. App'x 10 (2d Cir. 2014) (summary order).
"If all four of the above conditions are met, issue preclusion is
applicable even if the two suits are not based on the same cause
of action." Proctor v. LeClaire, supra, 715 F.3d at 414, citing
Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 326 (1955) and
Balderman v. U.S. Veterans Admin., 870 F.2d 57, 62 (2d Cir.
1989); see also United States v. Mendoza, supra, 464 U.S. at 158
("Under the judicially-developed doctrine of collateral estoppel,
once a court has decided an issue of fact or law necessary to its
judgment, that decision is conclusive in a subsequent suit based
on a different cause of action involving a party to the prior
litigation.").

　　　　Although collateral estoppel is an affirmative defense,
see Curry v. City of Syracuse, 316 F.3d 324, 330-31 (2d Cir.
2003); Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995), where
it is clear from the face of a complaint that a claim is barred
by a prior judgment, the complaint may be dismissed prior to any
discovery pursuant to Rule 12, Conopco, Inc. v. Roll Int'l, 231
F.3d 82, 86-87 (2d Cir. 2000).  "The party asserting issue
preclusion bears the burden of showing that the identical issue
was raised and necessarily decided in a previous proceeding,
while 'the party against whom the doctrine is asserted bears the
burden of showing the absence of a full and fair opportunity to

litigate in the prior proceeding.'" <u>Narumanchi v. Am. Home</u> <u>Assurance Co.</u>, 317 F. App'x 56, 58-59 (2d Cir. 2009) (summary order), <u>citing</u> <u>LaFleur v. Whitman</u>, 300 F.3d 256, 272 (2d Cir. 2002) <u>and</u> <u>Colon v. Coughlin</u>, <u>supra</u>, 58 F.3d at 869; <u>accord</u> <u>Webster v. Wells Fargo Bank, N.A.</u>, 08 Civ. 10145 (LAP), 2009 WL 5178654 at *9 (S.D.N.Y. Dec. 23, 2009) (Preska, D.J.), <u>aff'd</u>, 458 F. App'x 23 (2d Cir. 2012) (summary order); <u>V'soske, Inc. v.</u> <u>Vsoske.com</u>, 00 Civ. 6099 (DC), 2001 WL 546567 at *6 (S.D.N.Y. May 23, 2001) (Chin, then D.J., now Cir. J.).

A collateral estoppel defense may be predicated on an arbitration award whether or not the award has been judicially confirmed.  <u>Jacobson v. Fireman's Fund Ins. Co.</u>, 111 F.3d 261, 267 (2d Cir. 1997); <u>accord</u> <u>Eatoni Ergonomics, Inc. v. Research in</u> <u>Motion Corp.</u>, 486 F. App'x 186, 190 (2d Cir. 2012) (summary order), <u>citing</u> <u>Bear, Stearns & Co., Inc. v. 1109580 Ontario,</u> <u>Inc.</u>, 409 F.3d 87, 91 (2d Cir. 2005); <u>Commins v. Habberstad BMW</u>, No. 11-cv-2419 (JFB), 2012 WL 956185 at *5 (E.D.N.Y. Mar. 20, 2012) ("'[C]ollateral estoppel appl[ies] to arbitration awards with the same force and effect as [it] appl[ies] to judgments of a court.'"), <u>quoting</u> <u>Mitra v. Global Fin. Corp.</u>, No. 09-CV-4387 (DLI)(RLM), 2010 WL 1529264 at *1 (E.D.N.Y. Apr. 15, 2010).

Additionally, the granting of a motion to dismiss on substantive grounds is considered a judgment on the merits.  <u>See</u>

Overview Books, LLC v. United States, No. 08-CV-1842 (ENV) (CLP),
2010 WL 5178028 at *4 (E.D.N.Y. Dec. 13, 2010), aff'd, 438 F.
App'x 31 (2d Cir. 2011) (summary order), quoting Ramirez v.
Brooklyn Aids Task Force, 175 F.R.D. 423, 426 (E.D.N.Y. 1997),
aff'd, 164 F.3d 619 (2d Cir. 1998); see also DePasquale v.
Allstate Ins. Co., 179 F. Supp. 2d 51, 59 (E.D.N.Y.), aff'd, 50
F. App'x 475 (2d Cir. 2002) (summary order).

> b.  Application of the
>     Foregoing Principles

Plaintiff's FINRA Arbitration Statement of Claim
asserted causes of action against Chase for "breach of contract,
commissions, compensation, libel or slander on Form U5, and
wrongful termination" and requested relief in the form of damages
"and expungement" (FINRA Arb. Award at 1).  Based on "the plead-
ings, the testimony and evidence presented at the hearing," the
FINRA Arbitration Panel "decided in full and final resolution of
the issues submitted for determination" that plaintiff's "claims
[we]re denied in their entirety" and that any and all relief was
denied (FINRA Arb. Award at 2).  Plaintiff's Lobaito I complaint
similarly alleged that he was "terminated, for no reason," and
that Chase "wrote an untrue comment on [plaintiff's] licenses,"
which "blocked [him] from working in the financial industry ever

27

again," "ruined [his] future in the financial industry, [and] ruined [his] licenses, [which] are now expired" (Lobaito I Compl. at III.C, V).  In dismissing plaintiff's complaint on res judi-cata grounds, Judge Gardephe held that plaintiff's claims -- including "that Chase 'wrote an untrue comment on [his] licenses, and lied, and made up a whole story about [him],' which 'ruin[ed] [his] future in the financial industry'" -- were the same, recycled claims from his FINRA arbitration.  Lobaito v. Chase Bank, supra, 2012 WL 3104926 at *4.

     In this action, plaintiff names FINRA as the defendant instead of Chase, but makes nearly identical allegations, namely, that Chase "fabricated a comment on [his] licenses," and that FINRA's failure to "demand that [Chase] cite the circumstances and specify and cite the company policies that were violated, on [his] licenses, in the comments section," ultimately "ruined [plaintiff's] licenses, and then two years later, [his] licenses expired" (Compl. at III.C).  Again, plaintiff seeks an order directing "the comment on [his] licenses" expunged (Compl. at V).

     To the extent that plaintiff in fact seeks to re-litigate his entitlement to expungement, all of the requirements of issue preclusion are satisfied.  First, the identical issue was raised in the FINRA arbitration, where plaintiff asserted a claim for "libel or slander on Form U5" and sought "expungement"

28

(FINRA Arb. Award at 1).  Second, the issue was actually liti-
gated and decided in the FINRA arbitration, where the FINRA
Arbitration Panel "decided in full and final resolution of the
issues submitted for determination" that plaintiff's claims were
"denied in their entirety" and that "[a]ny and all relief" was
denied (FINRA Arb. Award at 2).  See Lobaito v. Chase Bank,
supra, 2012 WL 3104926 at *3 ("[I]t is clear that the FINRA
arbitration panel's decision constitutes a final judgment on the
merits.").  Third, plaintiff had a full and fair opportunity to
litigate the issue in the FINRA arbitration, as noted by the
Arbitration Panel's recitation of its consideration of "the
pleadings and other materials filed by the parties," as well as
"the testimony and evidence presented at the hearing" (FINRA Arb.
Award at 1-2).  Fourth, the resolution of the issue by the
arbitration panel (i.e., Chase's alleged "libel or slander on
Form U5") was necessary to support the Arbitration Panel's final
judgment on the merits (i.e., the denial of all of plaintiff's
claims and requested relief "in their entirety") (FINRA Arb.
Award at 1-2).

        Accordingly, plaintiff should be collaterally estopped
from relitigating the expungement issue.  See Watkins v. Annucci,
02 Civ. 4475 (DAB), 2006 WL 722005 at *4 (S.D.N.Y. Mar. 22, 2006)
(Batts, D.J.); Myers by Myers v. Daubert, 633 F. Supp. 45, 48

(E.D. Pa.), <u>aff'd</u>, 808 F.2d 1517 (3d Cir. 1986); <u>cf.</u> <u>Mitra v.</u>
<u>Global Fin. Corp.</u>, <u>supra</u>, 2010 WL 1529264 at *2 ("The arbitration
award and judgment were clearly final determinations . . . on the
merits.  Moreover, it is clear that plaintiff now seeks collat-
eral reconsideration of an issue that has already been adjudi-
cated between the parties under the guise of a request for
injunctive relief.").

Finally, there is no merit to plaintiff's argument that
collateral estoppel is inapplicable because this case raises the
new issue of "whether or not FINRA violated its rules and caused
harm to Lobaito" (Pl.'s Mem. at 6), because, as discussed in Part
III.B.1 above, plaintiff has no private right of action based on
FINRA's alleged noncompliance with its own rules.[7]

---

[7] <u>See</u> <u>also</u> <u>Messinger v. JPMorgan Chase Bank, N.A.</u>, 13 Civ.
2444 (AJN), 2014 WL 904528 at *1–*2 (S.D.N.Y. Mar. 7, 2014)
(Nathan, D.J.) (where "Chase falsely reported in [plaintiff's]
FINRA Form U5 that he was terminated for misconduct" and
plaintiff sought "'the expungement of his Form U5,'" court
granted motion to dismiss finding plaintiff was attempting to
state a claim arising under a FINRA regulation, which "does not
provide Plaintiff with a free-standing 'expungement' cause of
action"); <u>Buscetto v. Fin. Indus. Reg. Auth.</u>, <u>supra</u>, 2012 WL
1623874 at *4 (granting motion to dismiss where plaintiff relied
upon FINRA rule as the basis for a claim seeking "a judgment from
this Court expunging reference to his bar from the securities
industry"); <u>Dobbins v. Nat'l Ass'n of Sec. Dealers</u>, <u>supra</u>, 2007
WL 2407081 at *3 ("[Plaintiff] has failed as a matter of law to
establish a legal claim for expungement of his record in the CRD
database under [FINRA] rules, or for an exemption from the
application of those rules.").

IV.  <u>Conclusion</u>

For the foregoing reasons, I respectfully recommend that defendant FINRA's motion to dismiss be granted in its entirety and that this action be dismissed.

V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 1310, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
       July 22, 2014

                                Respectfully submitted,

                                HENRY PITMAN
                                United States Magistrate Judge

Copies transmitted to:

Mr. Joseph Lobaito, Jr.
9 Bunnell Court
Staten Island, New York   10312

Suzanne E. Duddy, Esq.
Financial Industry Regulatory
   Authority, Inc.
1735 K Street, N.W.
Washington, D.C.   20006